UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| ANDREA SODDU, | : | Case No. 1:08-cv-693 |
| --- | --- | --- |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| THE PROCTER & GAMBLE CO., | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR TO DISMISS (Doc. 18) BE DENIED

Now before the Court is Defendant's motion for judgment on the pleadings or, in the alternative, motion to dismiss due to improper venue (Doc. 18) and the parties' responsive memoranda (Docs. 28, 33).

## I. INTRODUCTION

This case arises from the separation of Plaintiff Andrea Soddu from his employment with P&G-related entities Procter & Gamble Europe NV and Procter & Gamble S.R.L. Socio Unico. Specifically, Plaintiff claims that Defendant breached the terms of his termination by refusing to allow him to exercise stock options. (Doc. 1 at ¶ 15). Plaintiff presents his claims as though they relate solely to the Procter & Gamble

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

1992 Stock Plan, but Defendant alleges that his claims arise out of the termination of his employment and are therefore governed by the terms of two Severance/Settlement Agreements that Plaintiff executed upon his separation from his former employers.

Plaintiff brings causes of action for breach of contract and for a declaratory judgment based on that alleged breach. Defendant claims that Plaintiff's claims should be dismissed because he expressly waived and released these claims in the Severance/Settlement Agreements. In the alternative, Defendant argues that the Court should dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(3), alleging that the Southern District of Ohio is not the proper venue.

## II. FACTUAL BACKGROUND

As recently as 2002, Plaintiff was an executive employee of Procter & Gamble Europe NV and Procter & Gamble S.R.L. Socio Unico, two P&G-related entities in Europe. (Doc. 19 at ¶ 7).

While an employee of Defendant, Plaintiff was a participant in "The Procter & Gamble 1992 Stock Plan." (Doc. 1 at ¶¶ 3, 4). Between February 27, 1998 and September 24, 2001, Plaintiff was awarded stock options pursuant to the Plan. (*Id*. at ¶ 5). Prior to December 2002, Plaintiff allegedly exercised some of the stock options he had been granted pursuant to the Plan. (*Id*. at ¶ 6).

Effective December 31, 2002, Plaintiff's employment with Defendant ended, and he allegedly entered into two Severance/Settlement Agreements which provided for,

among other things, substantial pay and benefits. (*Id*. at ¶ 7; Doc. 19 at ¶ 7).

At the time of Plaintiff's separation, he had several unexercised stock options. (Doc. 1 at ¶ 8). Following Plaintiff's separation and thereafter, he attempted to exercise some of the options he had been granted. Defendant has denied Plaintiff's requests to exercise stock options and claims that Plaintiff's options were forfeited upon his termination. (*Id*. at ¶ 9).

As set forth in the Plan, "no stock options or stock appreciation rights shall be exercisable within one year from their date of grant, except in the case of the death of the recipient." (*Id*. ¶ 10, and Appendix 1, Article G, ¶ 2). At the time of Plaintiff's separation, all of his options were more than one year old and were exercisable. (*Id*. ¶ 11).

According to the Plan, exercisable options are void upon termination "except in the case of death, retirement . . . or Special Separation (as defined in section 6 of this Article G) of the recipient." (Doc. 28, Appendix 1, Article G, ¶ 4; Doc. 1 ¶ 12).

Under the Plan, a "Special Separation means any termination of employment, except a termination for cause or a voluntary resignation that is not initiated or encouraged by the Company, that occurs prior to the time a recipient is eligible to retire." (Doc. 1, Appendix 1, Article G, ¶ 6). Plaintiff claims that he meets the Plan's definition for a Special Separation because he was not terminated for cause and he did not initiate a voluntary resignation. (*Id*. ¶ 14).

Plaintiff asserts that Defendant has breached the terms of the Plan and seeks a declaratory judgment that he is entitled to all stock options that were granted and exercisable at the time of his separation and thereafter. (*Id*. ¶ 15). Plaintiff also seeks damages flowing from Defendant's refusal to allow him to exercise options after his termination; prejudgment interest; and all other legal and/or equitable relief to which he is entitled. (*Id*. ¶ 16).

Conversely, Defendant claims that the Severance/Settlement Agreements contained express release clauses by which Plaintiff explicitly waived any and every claim he might have had against his former employers and various related corporate entities, including Defendant and the Procter & Gamble 1992 Stock Plan. (Doc. 19, Exs. J and K at Article 9 and ¶ 7). The first of the Agreements between Plaintiff and Procter & Gamble Europe NV, states: "both parties fully and explicitly waive any further claim based on rights which could arise or have arisen from or concerning the relationship that existed between the employer and employee." (Doc. 19, Ex. J). The Agreement also provides that it is to be interpreted according to Belgian law and that "the courts of Brussels will apply concerning the obligations contained in the present agreement." (Doc. 19, Ex. J, at Art. 11).

The second of the Agreements between Plaintiff and Procter & Gamble S.R.L. Socio Unico, provides that Plaintiff "waives all rights . . . to exercise stock options." (Doc. 19, Ex. K at ¶ 7). It also states that "the parties expressly acknowledge that their

intention, in executing the present report, has been not only to settle any possible reasons of dispute regarding the employment relationship, its termination and the holding of positions in associated and/or affiliated companies, but also to prevent any possible reason of further dispute, even if not expressly identified or inferable in the present agreement, but nevertheless resulting from or connected with the employment relationship being terminated." (*Id*., at ¶ 10). The second Agreement also provides that it is governed by Italian law, and that the exclusive forum for resolving disputes relating to this Agreement is found in the courts of Rome. (*Id*.)

### III. STANDARD OF REVIEW

#### A. Fed. R. Civ. P. 12(c)

Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower v. Fed. Exp. Corp*., 96 F.3d 200, 203 (6th Cir. 1996).

The Supreme Court has explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To withstand the dismissal

motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id*. at 554-555. The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 555-556. The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id*. at 570.

Thus, the test for dismissal under Rule 12(b)(6) is a stringent one, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *See also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996). For these reasons, "courts have notably hesitated to grant motions for judgment on the pleadings." *Haeberle v. Univ. of Louisville*, 90 Fed. Appx. 895, 903 (6th Cir. 2004).

Generally, in evaluating motions to dismiss, courts "are not permitted to go beyond the facts alleged in the complaint and the documents upon which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3rd Cir. 1997). However, the court may consider limited documents attached to the pleadings

without converting the motion to one for summary judgment, including extrinsic matters that simply "fill in the contours and details of a complaint and add nothing new." *Yeary v. Goodwill Indus. Knoxville, Inc*., 107 F.3d 443, 445 (6th Cir. 1997). Matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997).

### B.     Fed R. Civ. P. 12(b)(3)

In the alternative, Defendant claims that the Court should dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(3). A defendant may move to dismiss for improper venue under Rule 12(b)(3). The plaintiff bears the burden of proving that venue is proper. In making Rule 12(b)(3) determinations, the court "may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." The court may dismiss or, in the interest of justice, transfer a case to "any district or division in which it could have been brought." 28 U.S.C. 1406(a). *Mansfield Prop., v. Med. Dev. Mgmt.,* No. 08-cv-668, 2008 U.S. Dist. LEXIS 70841, at *5 (N.D. Ohio).

## IV.     ANALYSIS

### A.     Fed. R. Civ. P.  12(c)

Defendant's 12(c) motion is based on the affirmative defense that Plaintiff has waived his claim to stock options through two settlement agreements. (Doc. 19 at ¶ 18).

One agreement is between Plaintiff and Procter & Gamble Europe NV (the "Belgian Agreement") (Doc. 19, Ex. J), and the other is between Plaintiff and Procter & Gamble S.R.L. Socio Unico (the "Italian Agreement") (*Id.*, Ex. K). Defendant attached these two agreements to its answer. (Doc. 19, Exs. J and K). Without any supporting affidavit or evidence, Defendant claims that the agreements were "intended to address each and every facet of Soddu's employment and termination thereof." (Doc. 18 at 3).

In its argument, Defendant relies on the holding in *Aho v. Cleveland Cliffs*, 219 Fed. Appx. 419 (6th Cir. 2007). In *Aho*, the plaintiff filed an action for declaratory judgment to determine if the settlement agreement he signed barred his right to exercise stock options. Defendant sought judgment on the pleadings pursuant to Rule 12(c). The court granted the defendant employer's motion for judgment on the pleadings, holding that the plaintiff's claims were barred by the express terms of the agreement which constituted both a waiver of claims and a covenant not to sue. *Id.* It is important to note, however, that unlike the instant case, there was a single integrated agreement in *Aho* that mentioned stock options. *Id.* at 420-21. The *Aho* court also found it significant that the release contained a provision expressly exempting certain benefits and claims which did not include stock options. *Id.* at 421-424. Accordingly, *Aho* is distinguishable from the instant case.

Plaintiff claims that he is entitled to vested stock options pursuant to the 1992 Stock Plan. (Doc. 1 at ¶¶ 12-14). Plaintiff argues that the settlement agreements should

be disregarded because they do not simply "fill in the contours of the complaint." *Yeary*, 107 F.3d at 445. In the alternative, Plaintiff asserts that if the Court considers the settlement agreements, it should also consider a document signed by R.G. Pease, a Senior Vice President at P&G, which purportedly explains how Plaintiff's stock options would be handled after his termination.[2] (Doc. 28, Soddu Decl., Ex. 1).

The undersigned finds that the agreements should be considered for purposes of deciding Defendant's motion for judgment on the pleadings because they were: (1) mentioned in Plaintiff's complaint;[3] and (2) attached as exhibits to Defendant's answer. *Menifee v. Rexam, Inc.*, No 3:04cv7522, 2005 U.S. Dist. LEXIS 19912, at *6 (N.D. Ohio Sept. 13, 2005) ("the Court may properly consider the exhibits to the answer without converting the motion into one for summary judgment").

It appears that the determination hinges on whether the settlement agreements were intended to fully address Plaintiff's termination. It does not appear that there is one single

---

[2] The Pease letter states that "[y]our stock options will be handled according to the Company Plan of the Procter & Gamble Company in Cincinnati." (Doc. 28 at 9). Plaintiff claims that the letter is significant because: (1) it confirms that the parties did not intend for Plaintiff to waive his right to vested stock options through the two settlement agreements; (2) it shows that Plaintiff retained the right to exercise stock options after the date he signed the settlement agreements; and (3) Plaintiff did in fact exercise some stock options after he signed the agreements on December 19, 2002. (*Id.*, Soddu Decl. at ¶ 13).

[3] "Effective December 21, 2002 Plaintiff's employment with Defendant ended through a mutual agreement. <u>Plaintiff and Defendant entered into a written agreement</u> which provided for, among other things, substantial pay and benefits." (Doc. 1 at ¶ 7) (emphasis added). This inference, however, only raises additional questions of fact, because the complaint references "a" written agreement, and Defendant claims that there are two settlement agreements.

integrated settlement agreement. Instead, the parties identify four documents, each of which addresses different periods of employment, different legal obligations, and different subjects. The undersigned finds that the Court need not decide whether to consider the Pease letter, because there are sufficient material questions of fact arising out of the documents referenced in the complaint (*i.e.*, the 1992 Stock Plan and the settlement agreement(s)) that prevent the Court from deciding the matter on the pleadings.

Accordingly, Defendant's motion for judgment on the pleadings should be **DENIED**.

### B. Improper Venue or Inconvenient Forum

In the alternative, Defendant argues that the Court should dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue or inconvenient forum.

#### 1. Fed. R. Civ. P. 12(b)(3)

Whether the Southern District of Ohio is the proper venue in this matter hinges on whether the Belgian and Italian Agreements are the sole documents governing Plaintiff's stock options. While these agreements expressly contain foreign forum clauses,[4] the 1992 Stock Plan provides that it is to be governed by the laws of the State of Ohio.[5] (Doc. 1, Appendix 1, Art. L).

---

[4] (*See* Doc. 17, Exs. J and K).

[5] Defendant admits that its principal place of business is in the Southern District of Ohio. (Doc. 19 at ¶ 2).

At this stage in the proceedings, the undersigned must resolve all factual conflicts in favor of the Plaintiff. *See* Fed. R. Civ. P. 12(b)(3). Therefore, the undersigned finds that Plaintiff has presented sufficient evidence that the 1992 Stock Plan governs his stock options, and that the Plan is governed by the laws of the State of Ohio. Accordingly, Defendant's motion to dismiss for improper venue should be **DENIED**.

### 2. Forum Non Conveniens

Defendant also argues that Plaintiff's claims should be dismissed pursuant to the doctrine of *forum non conveniens*. The Sixth Circuit has held that a "dismissal on *forum non conveniens* grounds is appropriate where the defendants established, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors . . . reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 709 (N.D. Ohio 2006) (citing *Duha v. Agrium, Inc.*, 448 F.3d 867 (6th Cir. 2006)).

Before balancing the various private and public interest factors at issue, the Court must first determine how much deference to afford Plaintiff's choice of forum. In general, a plaintiff's choice of forum is afforded a great amount of deference. American plaintiffs are afforded heightened deference. *Duha v. Agrium, Inc.*, 448 F.3d 867, 873-74 (6th Cir. 2006). Foreign plaintiffs, on the other hand, receive no choice-of-forum deference from the courts. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)

("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference"). Therefore, because Plaintiff is an Italian citizen, this Court does not afford him any deference in his choice-of-forum.

### a. Appropriate alternative forum

First, the Court must consider whether an adequate alternative forum exists. Normally, the adequate alternative forum requirement is satisfied by a showing that a defendant is "amenable to process" in the foreign jurisdiction. *Gulf Oil v. Gilbert*, 330 U.S. 501, 506-07 (1947). Whether Defendant is amendable to process in a foreign jurisdiction, again, depends on what contract governs Plaintiff's stock options. The settlement agreements provide that a proper forum can be found either in Brussels, Belgium, or Rome, Italy. (Doc. 17, Exs. J and K). However, the 1992 Stock Plan provides that Ohio is the proper forum. (Doc. 1, Appx. 1, Art. L). Therefore, the undersigned will focus attention on the balance of private and public factors.

### b. Private interest factors

Private interests include the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of unwilling witnesses, the possibility of viewing the scene if needed, and other practical problems that make trying a case easy, expeditious, and inexpensive.

*Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989).

Defendant argues that these factors indicate that the Southern District of Ohio is not an appropriate venue because the events at issue all took place in Europe, because that is where Plaintiff was employed, where his employment ended, where he still lives, and where his former employers remain located. (Doc. 18 at 14). Additionally, Defendant claims that much of the relevant evidence and individuals with knowledge of the situation are located in Europe. (*Id.*)

A forum selection clause is a private interest factor that "is one of the factors to consider in this calculus. Such a clause 'should receive neither dispositive consideration . . . nor no consideration.'" *Kerobo v. Sw. Clean Fuels Corp*, 285 F.3d 531, 537-38 (6th Cir. 2002). Here, it has *not* been established that the parties agreed to an enforceable forum selection clause governing the issues in this matter.

Plaintiff, conversely, submits that this case is about his right to exercise stock options based on a Plan that is administered in Cincinnati, Ohio and explicitly provides that it is to be "governed by and construed in accordance with the laws of the State of Ohio, United States of America." (Doc. 1, Appx. 1, Article L).

At this stage in the litigation, the undersigned is not convinced that the private interest factors weigh in favor of dismissal.

### c. Public interest factors

Relevant public interest factors include administrative difficulties of courts with congested dockets, the burden of jury duty on people of a community having no connection with the litigation, desirability of holding a trial near those most affected by it, and the appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Stewart*, 865 F.2d at 106.

Defendant claims that public interests also weigh heavily in favor of an inconvenient forum because Plaintiff's releases do not exist in official form in the English language and the agreements indicate that they are governed by foreign law. (Doc. 18 at 15). Therefore, an Ohio district court should not be deciding a case requiring interpretation of foreign language contracts. (*Id.*)

Additionally, Defendant argues that it is preferable for a court familiar with the controlling law to hear the case if the controlling law is that of a foreign country. The Supreme Court has held that the need to apply foreign law favors dismissal by this Court and adjudication of the case by the foreign court familiar with the applicable law. *Piper*, 454 U.S. at 260. The Sixth Circuit has followed accordingly, stating that "[t]his Court's unfamiliarity with the foreign law which will govern these actions supports dismissal on the basis of forum non conveniens." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984).

Again, at this stage in the litigation, the undersigned finds that the factual accuracy as to the public and private factors identified is still unknown. It is not clear what document governs Plaintiff's stock options or what law should be applied. Accordingly, the undersigned is unable to determine whether trial in this forum would be unnecessarily burdensome.

Therefore, Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) should be **DENIED**.

## V. CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that Defendant's motion for judgment on the pleadings or to dismiss (Doc. 18) should be **DENIED.**

Date: November 10, 2009          s/ Timothy S. Black
                                                    Timothy S. Black
                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREA SODDU, | : | Case No. 1:08-cv-693 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| THE PROCTER & GAMBLE CO., | : | |
| | : | |
| Defendant. | : | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **10 DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **10 DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).